IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DONNA SOUSA, | ) CASE NO. 3:10 CV 1433 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION &** |
| ) | **ORDER** |
| Defendant. ) | |

# Introduction

Before me[1] is an action by Donna Sousa seeking judicial review under 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security denying Sousa's application for disability insurance benefits.[2]

The Administrative Law Judge (ALJ), whose decision became the final decision of the Commissioner, found after a hearing that Sousa had the residual functional capacity for light work with a sit/stand option, plus additional postural and functional limitations, and so concluded that Sousa was not disabled, thereby denying her application.[3]

---

[1] After the parties consented to my exercise of jurisdiction (ECF # 11), the case was then transferred to me by United Stated District Judge Jack Zouhary (ECF # 12).

[2] ECF # 1.

[3] Transcript ("Tr.") at 20.

Following that decision and the filing of the present action seeking review, the parties here have fully briefed their positions[4] and participated in an oral argument.[5] For her part, although Sousa raises three issues, her principal arguments concern the ALJ's decision on the residual functional capacity (RFC) and the determination of credibility. As to the RFC issue, Sousa maintains that the ALJ "discarded" and failed to assign proper weight to the residual functional capacity findings of Stephanie Gibson, M.D., Sousa's primary care physician.[6] As regards the credibility determination, Sousa argues that the ALJ selectively took testimony out of context to present a "distort[ed]" picture of Sousa's symptoms.[7]

The Commissioner, in turn, maintains that the ALJ specifically found that Dr. Gibson's assessment was not persuasive because no medical evidence were cited to support the limitations imposed, and the record as whole did not support such restrictions.[8] The Commissioner further contends that substantial evidence ultimately supports the ALJ's decision on credibility.[9]

For the reasons that will be discussed below, I will remand this matter for further proceedings.

---

[4] ECF # 18 (Commissioner's brief); ECF # 20 (Sousa's brief).

[5] ECF # 22.

[6] ECF # 20 at 19.

[7] *Id.* at 18.

[8] ECF # 18 at 10.

[9] *Id.* at 11-13.

**Facts**

**A.     Background**

Sousa, who was 47 years old at the time of the ALJ's decision,[10] has an eighth-grade education, and previously worked as a packer, a bakery worker, and an optical assembler.[11] Following a 2002 injury at work, diagnostic tests revealed degenerative disc disease and a herniated nucleus pulposus at L5-S1.[12] Endoscopic decompressive surgery was done in 2004, which was followed by "extensive conservative treatment including physical therapy and epidural steroid injections, which [Sousa] reports have not helped" relieve her complained of "back pain with radiation into her legs ...."[13]

Sousa told the ALJ that she had stopped working in 2002 and lived alone with her 14 year old son, whom she assisted in getting off to school each day.[14] She also testified that she cannot lift her two young grandchildren when they visit, and that although the pain medication she takes makes her drowsy, she cannot comfortably fall asleep and so does not

---

[10] ECF # 18 at 2 (citing transcript).

[11] ECF # 20 at 3 (citing transcript).

[12] Tr. at 15.

[13] *Id*.

[14] *Id*. at 17.

sleep well.[15] She told the ALJ that her main complaints are a "charlie horse" sensation in her feet and ankles, and a burning sensation in her tailbone.[16]

**B.      The ALJ's decision**

The ALJ concluded at step three that Sousa was taking non-steroidal anti-inflammatory and pain medications, and medication for high blood pressure, which was effective.[17] He also found that although Sousa had been diagnosed with depression, it was being treated medically, and that the depression was "non-severe" when evaluated under the four functional areas in what is known as "paragraph B."[18]

Turning then to the issue of residual functional capacity, the ALJ found, as noted above, that Sousa retained the capacity to do light work with a sit/stand option, as well as additional limitations such as: only occasional stooping, kneeling, crouching, and crawling; avoidance of climbing and excessive uninterrupted walking and/or standing; and exposure to hazards such as heights and operating dangerous moving machinery.[19]

In making this finding, the ALJ noted first that although Sousa's medically determinable impairments could reasonably be expected to produce her symptoms, Sousa was not credible as to her statements regarding the intensity, persistence, or limiting effects

---

[15] *Id*.

[16] *Id*.

[17] *Id*. at 15.

[18] *Id*. at 16 (citing 20 C FR, Part 404, Subpart P, App'x 1).

[19] *Id*.

of those symptoms.[20] Specifically in that regard, the ALJ observed that medical evidence showed no evidence of neuropathy and that an electrodiagnostic examination of the right lower limb was normal.[21] Further, she noted that results of an x-ray and an MRI of Sousa's back "show [a] stable condition with minimal degenerative changes minimal disc bulge at L5-S1."[22] In additional support, the ALJ's decision then cited numerous medical examinations with results "within normal limits."[23]

Having reviewed the medical evidence, the ALJ then proceeded to examine the opinion evidence. In that regard, the opinion dealt with a 2007 physical capacity finding completed by Dr. Gibson on Sousa.[24] After summarizing the restrictions given by Dr. Gibson, Sousa's treating physician, the ALJ did not directly assign a weight to that opinion, but immediately observed that Dr. Gibson "failed to provide medical findings to support the limitations indicated," and further found that Dr. Gibson's functional limitation findings "are inconsistent with [Sousa's] treatment records" that were previously described.[25]

---

[20] *Id.* at 17.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 19.

[25] *Id.*

On that stated basis, the ALJ determined that Dr. Gibson's functional assessment was not "persuasive."[26]

Thus, the opinion noted, because other physicians had concluded that Sousa did not require surgery, but should "seek pain management treatment, engage in rehabilitative therapy and return to work," the ALJ made the functional capacity finding quoted above.[27]

The opinion concluded, on the basis of testimony by a vocational expert, that Sousa was capable of performing her past relevant work as an optical assembler, since that work was not precluded by the residual functional capacity finding.[28]

**C.     Present issues**

As stated above, Sousa now raises three issues:

1. Whether substantial evidence supports the ALJ's finding that [Sousa] retained the capacity to perform a limited range of light work, and the weight she assigned the medical source opinions.

2. Whether substantial evidence supports the ALJ's credibility finding.

3. Whether substantial evidence supports the ALJ's step four finding that [Sousa's] past relevant work as an optical assembler accommodated her residual functional capacity for a limited range of light work.[29]

---

[26] *Id.*

[27] *Id.* at 20.

[28] *Id.*

[29] ECF # 20 at 1.

## Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[30]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[31] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[32]

---

[30] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[31] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[32] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[33]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[34]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[35] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[36]

---

[33] 20 C.F.R. § 404.1527(d)(2).

[34] *Id.*

[35] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[36] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[37] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[38] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[39] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[40]

In *Wilson v. Commissioner of Social Security*,[41] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[42] The court noted that the regulation expressly contains a "good reasons" requirement.[43] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[37] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[38] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[39] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[40] *Id.* at 535.

[41] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[42] *Id.* at 544.

[43] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[44]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[45] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[46] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[47] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[48]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given

---

[44] *Id.* at 546.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[49] Second, the ALJ must identify for the record evidence supporting that finding." [50] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[51]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

---

[49] *Wilson*, 378 F.3d at 546.

[50] *Id.*

[51] *Id.*

[52] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[53] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[54] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

---

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

---

[60] *Id.*

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id*. at 409-10.

[66] *Id*. at 410.

In *Cole v. Astrue*,[67] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

## B.  Application of standards

As is apparent from the above presentation of the issues, and was clear during the oral argument, this case turns first on whether the ALJ properly handled the RFC opinion of Sousa's treating physician and then, secondarily, on whether substantial evidence supports the finding on Sousa's credibility.

As to the matter of the RFC determination by Dr. Gibson, Sousa's treating physician, the ALJ did not handle Dr. Gibson's opinion strictly in accord with the Sixth Circuit's protocol for such opinions.  As set forth previously, the clear case authority in the Sixth Circuit sets up a three-part requirement for an ALJ if a treating source's opinion is not to be given controlling weight:  (1) the ALJ must explicitly find that such opinion is not to be given controlling weight and state the reasons for that decision in terms of the regulation (absence of support by clinical or laboratory evidence and/or inconsistency with other evidence of record); (2) the ALJ must then identify for the record the evidence supporting

---

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[68] *Id.* at 940.

-14-

that finding; and (3) the ALJ must then determine what weight to give the treating source's opinion.[69]

As applies in this case, the Sixth Circuit explicitly teaches that in articulating good reasons for assigning less than controlling weight, the ALJ may not merely stop with the first of the preceding three factors and simply state that the opinion of the treating source differs from the opinion of a non-treating source, or that objective medical evidence does not support the opinion of the treating source.[70] Rather, as also applies here, the Sixth Circuit has said that the rejection or discounting of a treating source opinion without assigning weight to that opinion is grounds for a remand.[71]

In this case, the ALJ failed to assign weight to the opinion of Dr. Gibson, Sousa's treating physician. Although the ALJ specifically found Dr. Gibson's opinion not persuasive, the matter must be remanded. As discussed above, such a failure to follow the rules denotes, of itself, a lack of substantial evidence to support a finding, even if the decision may be otherwise justified on the record as a whole.[72]

That said, I note as to the credibility finding raised by Sousa as to her second issue, that although the ALJ is in the best position to gauge a claimant's credibility,[73] and so the

---

[69] *Wilson*, 378 F.3d at 546.

[70] *Friend*, 375 F. App'x at 552.

[71] *Blakley*, 581 F.3d at 408.

[72] *Id.* at 407.

[73] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

ALJ's determination in that regard should not be disturbed without a compelling reason,[74] it is also true that in assessing a claimant's credibility the ALJ must consider the record as a whole.[75]

In this instance, while the entire record, including the medical and physical evidence, as well as the ALJ's own observations, may well support a finding that Sousa's subjective pain complaints are not fully credible, that support should not be grounded in any selective editing of a claimant's own testimony.  If such testimony is then to be discounted for any reason by other evidence, such as contradictory statements by the claimant as well as other testimony, any impeachment of the claimant's credibility should be clear and apparent in the record, and not silently bolstered by converting the opinion into an advocate's brief.  Because this case is being remanded for reconsideration and proper articulation of the opinion of Dr. Gibson, the ALJ should also reconsider the credibility finding and provide proper articulation.[76]

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Sousa had no disability.  Accordingly, the decision of the Commissioner denying Sousa's disability

---

[74] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[75] *See*, *Rogers*, 486 F.3d at 247-49 (ALJ erred in credibility determination where ALJ failed to provide specific reasons for finding on credibility in relation to the entire case record).

[76] *See*, *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

insurance benefits is reversed and the case remanded for reconsideration of the weight to be assigned the opinion of the treating physician and for a statement of good reasons for the weight so assigned, as appropriate. If the ALJ determines that the discounting of Sousa's credibility is warranted, he must clearly articulate the reasons for that decision.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[77] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.


Dated: March 14, 2012                                s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

---

[77] 28 U.S.C. § 2412(d)(1)(A).